652 So.2d 1331 (1995)
Billie Jo JONES, et al.
v.
ST. FRANCIS CABRINI HOSPITAL [1], et al.
No. 94-C-2217.
Supreme Court of Louisiana.
April 10, 1995.
*1332 Harry Alston Johnson, III, Phelps Dunbar, Baton Rouge, Charles H. Munsterman, Alexandria, for applicant.
Milo Addison Nickel, Jr., Woodley, Williams, Fenet, Boudreau, Norman & Brown, Lake Charles, for respondent.
Troy E. Bain, Shreveport, for Troy E. Bain and Louisiana Trial Lawyers Ass'n amicus curiae.
Lawrence S. Kullman, New Orleans, for Louisiana Trial Lawyers Ass'n amicus curiae.
MARCUS, Justice[*].
On February 5, 1989, Mrs. Ruby Lee Jones, age 75, was admitted to St. Frances Cabrini Hospital (Cabrini) with a broken hip. Dr. John Weiss, an orthopedist, diagnosed her condition as a fracture of the left hip and performed surgery to place a screw nail in the bone to compress the fracture.
Prior to surgery, blood tests were performed and suggested that Mrs. Jones had anemia. Dr. Harishwar Agarwal, a specialist in internal medicine and gastroenterology, testified that anemia in someone of Mrs. Jones' age usually indicates bleeding in the stomach or colon and may indicate colon cancer. Therefore, Dr. Agarwal ordered three tests focusing on that area. First, Dr. Agarwal conducted a gastroscopic examination, which revealed no bleeding. Second, Dr. Agarwal used a flexible sigmoidoscope to examine Mrs. Jones' rectum and the lower part of her colon. No bleeding was found, and her rectum appeared normal. Finally, on February 16, 1989, Dr. William Baber, a radiologist who was not an employee of Cabrini, performed a barium enema examination. Cabrini employees inserted the rectal tube and began the flow of barium. Dr. Baber found that the barium flow was not progressing as expected. Several attempts were made to correct the problem and x-rays were taken. Upon examination of the x-rays, Dr. Baber concluded that the barium was collecting outside of Mrs. Jones' rectum and that a pararectal tear had occurred.
Dr. Baber immediately ordered the flow of barium stopped and called Dr. Agarwal and Dr. Weiss. Dr. Agarwal called in Dr. Donald Edgerton, a general surgeon, as a consultant. Dr. Edgerton concluded that the presence of fecal material outside of the normal confines of the intestinal tract, together with the barium, created a chance of serious infection that required surgery. That afternoon, Dr. Edgerton performed a colostomy on Mrs. Jones, whereby the bowel was cut in two, the fecal stream directed to a bag outside of the body, and the lower half of the colon stapled or sutured closed.
Following the surgery, Mrs. Jones remained at Cabrini for convalescence from both her hip injury and the colostomy surgery. Dr. Weiss' orders indicated that no weight was to be put on Mrs. Jones' hip. However, while transferring her to a wheelchair, a Cabrini nurse apparently caused her to put weight on her leg contrary to the doctor's orders, resulting in pain. Dr. Weiss ordered x-rays, which revealed some compression or separation of the bone in her hip. As a result of this incident, Mrs. Jones requested a transfer from Cabrini and was transferred to Rapides General Hospital (Rapides) in early March, 1989. After convalescing at Rapides for approximately one month, she was discharged on April 6, 1989, and returned to the nursing home where she resided prior to her hospitalization. While at the nursing home, Mrs. Jones was unable to *1333 change her colostomy bag herself due to the arthritis in her hands, and required assistance from nurses or her family to change the bag.
At the time Dr. Edgerton performed the colostomy, he had informed Mrs. Jones that if everything went well, he would be able to reverse it in six to eight weeks. Thereafter, Mrs. Jones and Dr. Edgerton had several discussions about the reversal. Dr. Edgerton testified that he tried to dissuade Mrs. Jones from going through with the reversal because of the risks involved, although he admitted that he believed she had a reasonable chance of surviving the procedure and knew she felt strongly about wanting the reversal.
On May 3, 1989, Dr. Edgerton readmitted Mrs. Jones to Rapides and reversed the colostomy the next day. Shortly after the reversal, she developed severe complications, including leakage of fecal material. In an attempt to correct the leakage, Dr. Edgerton performed an ileostomy (an operation similar to a colostomy) on May 14, 1989. Three days later, Mrs. Jones developed bleeding. A second ileostomy was performed in an attempt to stop the bleeding. However, Mrs. Jones continued to show evidence of bleeding even after this operation. As Mrs. Jones was extremely ill at this time, it was felt that she could not survive another operation. Therefore, procedures were attempted to cause the blood vessels to clot, but were unsuccessful. On June 8, 1989, approximately one month after being admitted to Rapides for the reversal, Mrs. Jones died.
After proceeding through the medical review panel, Billie Jo Jones and Willie V. Jones, Jr.,[2] individually and as provisional administrator of the estate of Ruby Lee Jones, filed a "petition in suit for damages for wrongful death, survival action and medical expenses," naming as defendants Cabrini, Dr. Baber and his insurer. Of the eleven allegations of negligence against Cabrini in the petition, ten related to the rectal perforation and one related to the hip separation. Plaintiffs named the Louisiana Patient's Compensation Fund (PCF) as an additional defendant. Subsequently, Cabrini, as a selfinsured health care provider, agreed to settle its liability for $100,000 in accordance with La. R.S. 40:1299.44(C). Upon joint motions by plaintiffs and Cabrini, the trial judge approved the settlement and dismissed Cabrini with prejudice, reserving plaintiffs' rights against the PCF, Dr. Baber and his insurer.[3]
The case was tried before a jury. At the conclusion of the trial, the jury returned the following verdict:
WE, THE JURY, FIND AS FOLLOWS:
IN EACH SPACE BELOW, PLEASE INDICATE THE AMOUNT OF DAMAGES SUSTAINED BY THE PARTIES AS A RESULT OF THE LIABILITY OF THE DEFENDANT.

1. ESTATE OF RUBY LEE
 JONES
A. PHYSICAL AND BODILY
 INJURIES $ -0-
B. PAIN AND SUFFERING $ 50,000.00
C. DISFIGUREMENT $ -0-
D. LOSS OF ENJOYMENT
 OF LIFE $ -0-
E. PHYSICAL DISABILITY $ -0-
F. FUNERAL EXPENSES $ -0-
G. MEDICAL EXPENSES $ -0-
2. BILLIE JO JONES
A. MENTAL ANGUISH $ -0-
B. LOSS OF LOVE, AFFECTION
 COMPANIONSHIP
 AND SOCIETY $ -0-
3. WILLIE V. JONES, JR.
A. MENTAL ANGUISH $ 7,500.00
B. LOSS OF LOVE, AFFECTION
 COMPANIONSHIP
 AND SOCIETY $ -0-

*1334 The trial judge signed a judgment in accordance with this verdict and allowed the PCF a credit of $125,000 as a result of the prior settlements.
Plaintiffs appealed. A five judge panel of the court of appeal, with two dissents, affirmed in part and reversed in part.[4] On appeal, plaintiffs argued the trial judge's jury instructions were incorrect on the issue of Cabrini's liability. The court found no error in the jury instructions. However, it found that the jury's verdict sheet contained "internal inconsistencies,"[5] and therefore performed a de novo review of the record. The court held that Cabrini's settlement for $100,000 constituted an admission of liability for both the separated hip and perforated rectum. It awarded damages for the hip separation, rectal perforation and resulting colostomy. However, the court refused to award damages for the reversal of the colostomy and subsequent death. Accordingly, it made an award of general damages in the amount of $82,000, plus an award of special damages in the amount of $40,998.62. These amounts were made subject to the credit granted to the PCF as a result of the prior settlements ($125,000). No award was made on the wrongful death claim.
Upon plaintiffs' application, we granted certiorari to review the correctness of that decision.[6] Plaintiffs claim the court of appeal erred: (1) in concluding the jury instructions concerning the effect of a full settlement by Cabrini were correct; (2) in finding Cabrini was not liable for the reversal of the colostomy and resulting death, and (3) in its calculation of damages in the survival and wrongful death actions.

Jury Instructions and Cabrini's Liability
La. R.S. 40:1299.44(C)(5) provides in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
Plaintiffs argue that since Cabrini paid $100,000, its liability was established. As a result, they argue the trial judge incorrectly instructed the jury in such a way as to lead it to believe it could decide liability. The relevant portion of the jury charges are as follows:
Liability admitted. Liability is stipulated or admitted in this case and the jury will not have to make a finding on legal liability.

* * * * * *
Damages. We next come to the issue of damages. In this case while the fault or liability of St. Frances Cabrini to the plaintiff is established, the plaintiff at trial must nonetheless demonstrate what damages by kind and by seriousness were caused by St. Frances Cabrini's fault.

* * * * * *
You are not to award damages for any injury the plaintiffs may have suffered unless it has been established by a preponderance of the evidence in the case that such injury was proximately caused by St. Frances Cabrini Hospital. (emphasis added).
Plaintiffs argue that the phrase "damages by kind and by seriousness" could have been misinterpreted by the jury to mean "kind of *1335 injury." Further, plaintiffs contend that in light of the PCF's closing argument,[7] the jury could have mistakenly believed that one "kind of injury" (the hip separation) had been proved, but another "kind of injury" (the rectal perforation) had not.
Plaintiffs' argument is not without merit. Our decisions interpreting La. R.S. 40:1299.44(C)(5) have made it clear that once one health care provider has settled for $100,000, liability for malpractice is admitted and the only issue between the victim and the PCF is the amount of damages. In Stuka v. Fleming, 561 So.2d 1371, 1374 (La. 1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990), we stated:
The Medical Malpractice Act therefore contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, and that the Fund is primarily concerned with the issue of the amount of damages. Payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider's malpractice. Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice.
See also Russo v. Vasquez, 94-2407 (La. 1/17/95); 648 So.2d 879; Thomas v. Insurance Corp., 93-1856 (La. 2/28/94); 633 So.2d 136.
Therefore, the PCF's closing argument, insofar as it stated that Cabrini did not admit the rectal perforation, and that plaintiffs had to prove Cabrini, rather than Dr. Agarwal or Dr. Baber, was responsible for it, was incorrect, since the $100,000 settlement by Cabrini admitted and established its liability for both the hip separation and the rectal perforation.[8] Although the trial court's jury instruction, when taken as a whole, was not an erroneous statement of the law, certain language used in the instruction, especially if viewed in light of the PCF's closing argument, had the potential to mislead the jury. The combination of these factors with the jury's internally inconsistent verdict leads to the conclusion that no weight should be accorded to the jury verdict. McLean v. Hunter, 495 So.2d 1298 (La.1986). Accordingly, the court of appeal properly conducted a de novo review of the record. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).

Liability for Reversal of Colostomy and Death
In refusing to award damages for the reversal of the colostomy and subsequent treatments to stop the bleeding, the court of appeal concluded that these procedures were not "required to resolve the original harm." Likewise, the court found no connection between the hip separation and the rectal perforation and Mrs. Jones' death. We disagree.
In determining whether the reversal of the colostomy and Mrs. Jones' subsequent death were connected with the original harm, we look to the duty/risk analysis set out in Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985). In Weber, we addressed the issue of whether a host driver was liable to a tort victim who contracted hepatitis from a blood transfusion during treatment at Charity Hospital for injuries received in an automobile accident. We first determined that the host driver's negligence *1336 was a cause in fact of the victim's contracting of hepatitis, since the transfusion would not have been necessary but for the original injury caused by the negligence. Next, applying duty-risk principles, we determined that the duty of the host driver to refrain from causing injury to another by negligent operation of his vehicle encompassed the risk that the tort victim's injuries may be worsened by treatment for those injuries. Therefore, we held the host driver was liable for any damages resulting from the blood transfusion. See also Younger v. Marshall Industries, Inc., 618 So.2d 866 (La.1993).
Applying this analysis to the instant case, we conclude that the rectal perforation (for which Cabrini statutorily admitted liability) was clearly a cause in fact of the reversal of the colostomy, since the reversal would not have been necessary but for the rectal perforation and the resulting colostomy. Having established causation in fact, we must next determine whether the duty on Cabrini not to injure Mrs. Jones encompassed the risk that she would undergo a procedure to correct the original harm which would ultimately result in her death. We conclude that is reasonably foreseeable that Mrs. Jones, having been forced to submit to a colostomy due to Cabrini's negligent perforation of her rectum, would seek to have this procedure reversed, especially in light of her difficulty in managing the colostomy bag brought on by her arthritis.
Nonetheless, the PCF argues that Cabrini should not be held liable for the reversal and resulting death, since the testimony established that the reversal was a risky procedure and Mrs. Jones could have continued to live with the colostomy. Essentially, the PCF argues that Mrs. Jones' decision to undergo the reversal was unreasonable.
We find no support in the record for this position. Although Dr. Edgerton testified he tried to dissuade Mrs. Jones from having the reversal due to the risks involved, he unequivocally testified that at the time he admitted her to perform the reversal of the colostomy, he did not know that she would die as a result. He felt she had a 50/50 chance of survival and testified that if Mrs. Jones "wanted the surgery done with a reasonable hope that she would survive, I would do it." Based on this testimony, we are unable to conclude that Mrs. Jones' decision to undergo the reversal was unreasonable.
Accordingly, we find that Cabrini's liability extended to the reversal of the colostomy. Therefore, the PCF is responsible for any damages arising from the reversal, including Mrs. Jones' death.

Calculation of Damages
The court of appeal awarded general damages in the amount of $82,000 and special damages in the amount of $40,998.62 for Mrs. Jones' pain and suffering, living expenses and medical expenses arising out of the hip separation, rectal perforation and colostomy only. Damages for the reversal of the colostomy, subsequent treatments to control the bleeding and death were not awarded. Since we now conclude that the PCF is responsible for damages arising out of the reversal of the colostomy, including Mrs. Jones' death, we must increase the awards.
On the issue of Mrs. Jones' general damages, the record indicates that Mrs. Jones entered the hospital on May 3, 1989 for the reversal of the colostomy. Shortly thereafter, she suffered substantial complications from the surgery, including leakage of fecal material and later bleeding. She was forced to undergo two ileostomies, both of which were unsuccessful. Several attempts were made to control the bleeding, without success, and her condition continued to deteriorate. Mrs. Jones died on June 8, 1989, approximately one month after entering the hospital. We find that an award of $40,000 is adequate compensation. Accordingly, the court of appeal's general damage award of $82,000 will be increased to $122,000.
On the issue of special damages, the record indicates that plaintiffs introduced bills totalling $158,663.70 for medical and living expenses incurred after the perforation. *1337 The PCF did not controvert these expenses at trial. The court of appeal, with no explanation, awarded only $40,998.62. Accordingly, we must increase this award for special damages to $158,663.70. Also, plaintiffs introduced bills for funeral expenses in the total amount of $5,179.20, which were not contested; accordingly, this amount will be awarded.
The court of appeal awarded no damages on the wrongful death claim of Willie V. Jones, Jr. and Billie Jo Jones. Based on our finding that Cabrini was responsible for Mrs. Jones' death, an award of wrongful death damages is appropriate. The record indicates that Mrs. Jones had a close relationship with both of her children. Although her son, Willie, had died by the time of trial, testimony from his children and sister indicated that he had an especially close relationship with his mother because she cared for him when he suffered from childhood polio. He stayed with his mother frequently during her hospital stay and was with her on the day of her death. Likewise, Mrs. Jones' daughter, Billie Jo, was close to her mother. Although Billie Jo had moved out of state shortly after high school, she moved back in 1984 and visited with her mother monthly. While Mrs. Jones was in the hospital, she spent time with her and volunteered to be trained in dealing with the colostomy bag. Under these circumstances, we find an award of $100,000 each to Willie V. Jones, Jr. and to Billie Jo Jones is appropriate.
In sum, we amend the judgment of the court of appeal to award general damages in the amount of $122,000, special damages in the amount of $158,663.70, funeral expenses in the amount of $5,179.20 and wrongful death damages to Willie V. Jones, Jr. and Billie Jo Jones in the amount of $100,000 each. The total award of $485,842.90[9] will be subject to a $125,000 credit for amounts previously received in settlement by plaintiffs.

DECREE
For the reasons assigned, the judgment of the court of appeal is amended to increase the award of general damages from $82,000 to $122,000, to increase the award of special damages from $40,998.62 to $158,663.70, and to award funeral expenses in the amount of $5,179.20. The judgment is further amended to award $100,000 each in favor of Christopher Jones, in his capacity as administrator of the succession of Willie V. Jones, Jr., and Billie Jo Jones and against the Louisiana Patient's Compensation Fund as damages for the wrongful death of Mrs. Ruby Lee Jones, together with legal interest from the date of the filing of the complaint with the medical review panel. All amounts awarded against the Louisiana Patient's Compensation Fund will be subject to a credit for $125,000 previously paid in settlement. The judgment is reversed as to costs, and all costs are assessed against the Louisiana Patient's Compensation Fund. In all other respects, the judgment of the court of appeal is affirmed.
NOTES
[1] The proper spelling of the hospital's name is "St. Frances Cabrini Hospital." The name was misspelled in the original caption and has remained in this caption as originally spelled. However, the proper spelling will be used in the opinion.
[*] Judge Charles R. Lindsay, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis. Calogero, C.J. not on panel. Rule IV, Part 2, § 3.
[2] Willie V. Jones, Jr. died on August 13, 1992. By order signed September 1, 1992, his children, Christopher L. Jones and Kimberly Jones Cripps, were substituted as parties plaintiff.
[3] Subsequently, Dr. Baber and his insurer moved for summary judgment, on the ground that the settlement by Cabrini operated as an admission of liability on its part and barred recovery by plaintiffs against him. Plaintiffs opposed the motion. The motion was taken under advisement by the trial court but was apparently never ruled on. Thereafter, Dr. Baber and his insurer settled with plaintiffs for $25,000. Upon a joint petition, the trial judge approved the settlement and entered an order dismissing Dr. Baber and his insurer with prejudice and reserving plaintiffs' right to proceed against the PCF.
[4] 93-1375 (La.App. 3d Cir. 6/1/94); 638 So.2d 673.
[5] In finding the verdict inconsistent, the court noted that liability for the rectal perforation was admitted, but the jury failed to make an award of medical expenses for it. Additionally, it found the jury awarded wrongful death damages to Willie Jones, Jr., yet failed to make a similar award to Billie Jo Jones, or award funeral expenses.
[6] 94-2217 (La. 12/19/94); 648 So.2d 397.
[7] In his closing argument, the attorney for the PCF told the jury that the hip separation was an "admitted issue." However, he went on to say that plaintiffs' counsel "had to prove to you that St. Frances Cabrini Hospital caused the perforation, that was his job, not that Dr. Agarwal did it, not that Dr. Baber did it, not that someone else did it, he had to prove to you that St. Frances Cabrini Hospital did it. The evidence in this case on that issue I don't think he proved that to you."
[8] We note that once Cabrini settled for $100,000, Dr. Baber should have been released from the suit on summary judgment, since under Stuka, his liability could no longer be at issue.
[9] An interesting question presented by this case is whether the damage award should be subject to two separate $500,000 caps, since two injuries (the hip separation and rectal perforation) were involved. Since our total award falls under $500,000, we need not address this issue.