753 So.2d 891 (1999)
Millard J. GUILLOT, Sr., et al., Plaintiffs-Appellants,
v.
VALLEY FORGE INSURANCE COMPANY and Clint Bishop, Defendants-Appellees.
No. 99-1044.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
*892 James Paul Lambert, Lafayette, for Millard J. Guillot, Sr., et al.
William Allen Repaske, New Iberia, for Valley Forge Insurance Company, et al.
BEFORE SAUNDERS, WOODARD and DECUIR, Judges.
*893 SAUNDERS, Judge.
On July 9, 1997, Millard A. Guillot was struck by a pick up truck driven by Clint M. Bishop (hereinafter "Defendant"), while riding his bicycle. Two months later, Guillot died from a pulmonary embolism which stemmed from his inactivity due to the serious injuries he had suffered as a result of the accident.
After a jury trial, Defendant and Guillot were each found to be fifty percent at fault for the accident. Guillot's wife and children were awarded a total of $190,000.00 in damages and Guillot was awarded a total $153,047.00 in general and specific survival damages. We reverse in part and amend in part.

FACTS
In Jeanerette, Louisiana, at the intersection of Georgia and Louisiana Streets, Guillot, who was eighty-two years old at the time, was riding his bicycle in a westerly direction. His bicycle was in the eastbound lane as he approached the intersection. Meanwhile, Defendant drove his truck from the north in a southerly direction down Louisiana Street and approached the intersection of Louisiana and Georgia. There he stopped, looked to the left, saw no one, looked to the right, his view was blocked, he crept up, looked to his right again, and saw that it was clear, did not look back to his left, and then proceeded through the intersection where he hit Guillot. Signs were posted by the City of Jeanerette to control the traffic approaching the intersection of Louisiana Street. Defendant testified that he slammed on his brakes and stopped almost immediately, yet he struck Guillot on the right side of his bike, knocking him over.
Guillot was initially taken to Dauterive Hospital, but was transferred to Lafayette General Medical Center (LGMC) due to a suspected subdural hematoma. He was found to have suffered contusions, fractured ribs, a collapsed lung and a fractured tibial plateau of his right leg. After experiencing asystole and bradycardia, he underwent implantation of a cardiac pacemaker on July 15, 1997. On July 17, 1997, he was transferred to an in-house rehabilitation unit and later to a skilled nursing facility at Heritage Manor Nursing Home for rehabilitation. There, Guillot died suddenly of a pulmonary embolism on September 3, 1997.
The widow and major children of Guillot, hereinafter "Plaintiffs," brought a wrongful death and survival action against Defendant and his insurer, Valley Forge Insurance Company. A judgment was signed on February 4, 1999, and Plaintiffs have brought this appeal.

LAW AND ANALYSIS

I. Assignment of Error No. 1:
Plaintiffs argue that the jury manifestly erred in finding Guillot fifty percent at fault for the accident. Apportionment of fault is a question of fact, subject to the manifest error/clearly wrong standard of review. Sims v. State Farm Auto. Ins. Co., 30,602 (La.App. 2 Cir. 5/13/98); 714 So.2d 132, writ granted, 98-1613 (La.10/9/99); 726 So.2d 13; Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). In reviewing allocation of fault, the Louisiana Supreme Court in Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607, 610-11, explained, "there is an analogy between excessive or inadequate quantum determinations and excessive or inadequate fault percentage determinations. In both, the trier of fact, unlike the appellate court has had the benefit of witnessing the entire trial and of reviewing first hand all the evidence."
The Clement court concluded, "[a]fter the court of appeal finds a `clearly wrong' apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion." Id. at 611.
Plaintiffs assert that the only argument offered to establish Guillot's negligence, *894 that he violated La.R.S. 32:197, is insufficient to reasonably allocate fifty percent of the fault to Guillot. We agree. In reviewing this matter, we note the governing statutes and jurisprudence. La.R.S. 32:197(A) provides that "[e]very person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction." La.R.S. 32:123(B) provides the rules for vehicles at stop signs:
Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
(Emphasis added.)
"Each intersectional accident is dependent upon and must be decided on its own facts." Crump v. Ritter, 583 So.2d 47, 50 (La.App. 2 Cir.1991), citing Ball v. Marquette Casualty Co., 176 So.2d 799 (La.App. 4 Cir.1965), writ denied, 248 La. 417, 179 So.2d 16. It is well settled that:
A motorist who is confronted with a stop sign at an intersection is required to bring his vehicle to a complete stop before entering the crossing, to appraise traffic in the intersecting street and to make certain that the way is clear for him to make a safe passage across the intersection before he enters it. When the motorist stops his vehicle before proceeding to cross a right of way street, he has performed only half of the duty which the law imposes upon him. To stop and then proceed in the immediate path of oncoming vehicles constitutes negligence.
McCauley v. LaFleur, 213 So.2d 176, 179 (La.App. 3 Cir.1968) and cases cited therein.
Ballaron v. Roth, 221 So.2d 297, 300 (La.App. 4 Cir.1969), explains that:
[T]o merely stop for a stop sign is to perform only a part of the required duty; such action must be followed by a careful observation of traffic conditions and the motorist controlled by the stop sign must yield the right of way to all vehicles lawfully proceeding on the favored roadway.
(Citations omitted.)
"A motorist is held to see that which with due diligence he should have seen." Audubon Ins. Co. v. Knoten, 325 So.2d 624, 625 (La.App. 4 Cir.1976).
In the matter before us, Defendant testified that he looked to his left, looked to his right, and because his view was blocked, moved his vehicle up and looked to the right again. Defendant then proceeded slowly through the intersection, never having seen Guillot until the moment before impact. After a review of the record and applicable law and jurisprudence, we are compelled to find that Guillot's role in the accident is minimal. Clearly, the statutes governing motorists at stop signs impose the responsibility of ascertaining the location of all traffic moving through the intersection. Even though Guillot was operating his bicycle in the wrong lane, it is without question that Defendant failed in his duty to perceive Guillot's presence. The question remains to what degree, if any, did Guillot's presence in the wrong lane prevent Defendant from fulfilling his duty? It is clear to this court that Guillot's violation of La.R.S. 32:127 did not in any way obstruct Defendant's view or distort or impair Defendant's field of vision. Moreover, it is clear that under the facts of this case, Guillot's location in the improper *895 lane of travel placed him further away from Defendant than if he had been in his proper lane. Defendant had to cross one complete lane and part of another before reaching Guillot, thus, giving him a greater opportunity to observe Guillot and to prevent this unfortunate accident. Had Defendant been approaching from the South, Guillot's location in the wrong lane could arguably be considered a partial cause of the accident as Defendant in this hypothesis is given less time to react to the previously unseen bicyclist.[1] Under our facts, however, Defendant is given a greater opportunity to recognize and correct his mistake, and Guillot's failure to comply thus accrues to the errant Defendant's benefit and cannot constitute the basis for contributory negligence on Guillot. We find Defendant's failure to make certain that the way was clear for him to make a safe passage across the intersection before he entered it is the sole causative factor leading to this accident. Accordingly, we find Defendant one-hundred percent at fault for the accident.

II. Assignment of Error No. 2
Plaintiffs argue jury error where it found Guillot's wife, Evelyn, did not suffer a past loss of support. Defendant notes that Plaintiffs' mistakenly assert their claim for loss of support rather than for loss of services. Indeed, it is clear to this court that the tenor of Plaintiffs' claim is seeking recompense for expenses incurred due to the negligent acts of Defendantall of which clearly seek damages for loss of services. Defendants argue that Plaintiffs set forth insufficient evidence establishing their losses. It is patently clear from the record, and utterly uncontested, that his wife, afflicted with Alzheimer's disease, was completely and absolutely dependant on her husband for every basic need and function necessary for her survival. In seeking damages for loss of past services, Plaintiffs cite costs that were necessitated after Guillot's hospitalization and after the family proved unable to care for Evelyn. The expenses for her care at the nursing home reached $34,310.81. Finding manifest error in the jury's refusal to award Plaintiffs past loss of services, we now award Plaintiffs $34,310.81 for the expenses incurred for Evelyn's care up to the time of trial.

III. Assignment of Error No. 3:
Plaintiffs assert that the jury abused its discretion where it failed to award the full amount of funeral expenses incurred. Since Defendants concede this in brief, no discussion is necessary. We now increase the jury's award of funeral expenses to $6,387.28.

IV. Assignment of Error No. 4:
Plaintiffs argue that the jury abused its discretion in awarding insufficient general damages. Our supreme court has set out the rules for review of general damages awards as follows:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular *896 case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993); cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The reviewing court may then increase or reduce the award only to the lowest or highest award which would have been within the trial court's discretion. Emerson v. Empire Fire and Marine Ins. Co., 393 So.2d 691 (La.1981).
Before a trial court's award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the case before it. Reck v. Stevens, 373 So.2d 498 (La.1979).

A. Guillot
A survival action is for the recovery of damages for a decedent from the time the injuries occurred until his death. La.Civ.Code art. 2315.1. Defendants argue that Guillot expressed very little expression of pain and was in good spirits while in the nursing home. We find this unpersuasive.
Damages are properly awarded if there is a scintilla of evidence of any suffering or pain on the part of the decedent by his actions or otherwise. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976). Damages may include the decedent's pre-impact fear. Thomas v. State Farm Ins. Co., 499 So.2d at 562.[2]
Reid v. State, Through Dep't of Transp. and Dev., 25,778 (La.App. 2 Cir. 5/4/94); 637 So.2d 618, writ denied 94-1415 (La.9/16/94); 642 So.2d 198.
In Mistich v. Volkswagen of Germany, Inc., 94-0226 (La.App. 4 Cir. 6/25/97); 698 So.2d 47, writ denied 97-1986 (La.11/14/97); 703 So.2d 623, writ denied 97-1994 (La.11/14/97); 703 So.2d 624, writ denied 97-1999 (La.11/14/97), 703 So.2d 624, the court affirmed an award of $150,000.00 in a survival action for a woman who, after the automobile accident, was in a vegetative state for eight weeks before she died. Guillot was awarded $20,000.00 in a survival action for the pain and suffering he endured before his death. We find this award inadequate, particularly in light of his pre-impact fear, the several invasive surgical procedures that he suffered as a result of the accident, and the pain and suffering associated therewith until he died. This, along with the broken bones and his consequent immobility, his removal from his home, and separation from his wife, all must be taken into consideration when gauging the damages suffered by Guillot. Accordingly, we now amend the award of damages to $150,000.00.

B. Evelyn
The trial court awarded Evelyn $75,000.00 in general damages for the loss of her husband. We agree with Plaintiffs that this poorly represents the losses suffered by Evelyn as one who was totally nurtured and cared for by her husband of more than fifty years. The record is resonate with the long and close relationship that existed between Evelyn and Guillot. The magnitude of Evelyn's emotional and physical dependence on her husband, who was her sole caretaker, is poignantly illustrated by her children's inability to care for her, which left no option other than to place her in a nursing home.
Plaintiffs cite several cases setting forth awards to widows substantially above that given to Evelyn, including Risley v. State Farm Fire and Cas. Co., 620 So.2d 950 (La.App. 3 Cir.1993), where we affirmed *897 the award of $530,000.00 to the widow of a seventy-seven year old man, and Brodtmann v. Duke, 96-0257 (La.App. 4 Cir. 2/11/98); 708 So.2d 447, writ denied, 98-0645 (La.4/24/98); 717 So.2d 1177, where the court affirmed the award of $500,000.00 to the widow of a sixty-four year old man, and also Mathieu v. State, Dept. of Transp. and Development, 598 So.2d 676 (La.App. 3 Cir.), writ denied, 600 So.2d 665 (La.1992), where we affirmed an award of $350,000.00 to a widow of a sixty-one year old man. An extremely close relationship between the widow and decedent is the common thread that runs through these cases. We are disposed to find the relationship between Evelyn and Guillot similarly situated. Nevertheless, we cannot enhance Evelyn's award to such monetary heights given the condition she is in.
Elements of damage for wrongful death are loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. Damages for wrongful death are intended to compensate the victim's beneficiaries for their compensable injuries following the victim's moment of death.
Mathieu, 598 So.2d at 681.
We find, in consideration of her reduced cognitive capacity brought on by Alzheimer's disease, the lowest award to Evelyn for general damages that was within the jury's discretion is $150,000.00. We amend the jury's award to reflect the same.

C. The Children
Guillot's five children were awarded $10,000.00 each for the wrongful death of their father. Plaintiffs argue this is manifestly erroneous in light of the children's close relationship with their father. In Mathieu, 598 So.2d 676, this court affirmed the trial court's award of $250,000.00 to each of the three children, ages twenty-seven, twenty-four and seventeen. The three children had an extremely close relationship with the decedent. The Mathieu court noted that Louisiana courts "have often upheld large wrongful death awards as reasonable in cases where the decedent and the surviving spouse and minor children had extraordinarily close and loving relationships." Id. at 682, emphasis added, citations omitted. In Jones v. St. Francis Cabrini Hosp., 94-2217 (La.4/10/95); 652 So.2d 1331, our supreme court awarded $100,000.00 to each of the two adult children of the elderly decedent. The Jones children were very close to their mother, (one had childhood polio and was cared for by his mother) and they spent a considerable amount of time with their mother in the hospital before she died. In Bertrand v. Bollich, 97-164 (La. App. 3 Cir. 6/4/97); 695 So.2d 1384, writ denied 97-1801 (La.10/13/97); 703 So.2d 621, this court enhanced the wrongful death damages award from $15,000.00 to $70,000.00 for each child surviving the death of their mother in light of their close and supportive relationship. In Bertrand, the mother was in her late fifties and the children were in their early thirties.
The uncontradicted testimony of all of Guillot's children evidenced a very close family relationship. Each adult child maintained regular and frequent contact with their father. The youngest of the children is Eva Marie Guillot, who is thirty-nine and the eldest is Emmanuel Anthony Guillot, Sr., who is sixty. All of the children are independent and have their own families. Evidently the jury did not find that the closeness attested to by the children warranted a loss estimation of more than $10,000.00. In light of the jurisprudence and the record, we find this award unreasonably low and manifestly erroneous. With a view for the close and supportive relationship the children had with their father, we find that the lowest award of damages for the death of Guillot that a jury could reasonably have found is $50,000.00 to each adult child.

DECREE
In accordance with the foregoing discussion, we amend the jury's percentage allocation of fault to find Defendant, Clint M. *898 Bishop, one-hundred percent liable for the accident that occurred on July 9, 1997. Further, we reverse the jury's denial of Evelyn Guillot's claim for loss of services and award her $34,310.41. We award Plaintiffs the funeral expenses of $6,387.28, and increase the award of general damages to Guillot from $20,000.00 to $150,000.00. We also increase the award to Ms. Guillot from $75,000.00 to $150,000.00 for loss of her husband and to each of Guillot's surviving adult children from $10,000.00 per child to $50,000.00 per child. All costs of appeal are to be borne by Defendant.
AFFIRMED AS AMENDED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] Indeed, it could be argued that the legislative intent of La.R.S. 32:127 is to keep traffic flowing in the same direction and has no relationship to the traffic on intersecting streets. In view of our decision, there is no contributory negligence under the facts before us. It is not necessary that we address the broader question of legislative intent, and we leave this question for another day.
[2] Thomas v. State Farm Ins. Co., 499 So.2d 562 (La.App. 2d Cir.1986), writ denied 501 So.2d 213(1987).