PEATROSS, J.
 

 [ ,In this suit for damages, Plaintiff, Dr. Kermit L. Walters, Jr., sued Defendants, Betty Goss and her insurance company, State Farm Mutual Automobile Insurance Company (collectively referred to as “Defendants”), in Monroe City Court, alleging that Ms. Goss was at fault for a motorcycle accident occurring on March 21, 2007. The trial judge agreed with Dr. Walters and found Ms. Goss to be 100% at fault for the accident. Consequently, the trial judge awarded Dr. Walters $18,500 in general damages and $209 in medical expenses with legal interest thereon and court costs. Defendants now appeal. For the reasons stated herein, we reverse the judgment of the trial court and render judgment in favor of Ms. Goss, dismissing the claims of Dr. Walters with prejudice.
 

 FACTS
 

 The accident in question occurred on March 21, 2007, at the intersection of North 6th St. and Hudson Lane in Monroe, Louisiana. Dr. Walters was driving his Honda motorcycle in the east lane of North 6th St. in a northerly direction while Ms. Goss was driving her Buick automobile on Hudson Lane in a westerly direction. A stop sign is located at the intersection directing motorists on Hudson Lane to stop before crossing North 6th St.
 

 Neither party disputes the fact that no impact ever occurred between Dr. Walters’ motorcycle and Ms. Goss’s Buick during the accident in question. According to Dr. Walters, he had turned onto and began traveling north on North 6th St. when he observed Ms. Goss’s vehicle, approximately |2one block ahead of him, at the intersection of North 6th St. and Hudson Lane.
 

 Ms. Goss had pulled up to the intersection where the stop sign was located and stopped; however, her view was obscured by various poles and signs on North 6th St. To enable herself to better see the oncoming traffic, Ms. Goss pulled several feet forward toward, and then passed, the white stop line until she was approximately four feet from the intersection, where she came to a complete stop. In spite of having pulled forward past the stop sign and white stop line to get a better view of oncoming traffic, Ms. Goss’s vehicle never entered the intersection.
 

 At this time Dr. Walters, who testified that he was traveling at 25 mph, was approximately 100 feet from the intersection. When Dr. Walters saw Ms. Goss pull up to the stop sign, stop and then pull forward past the white stop line, he assumed she would not stop at the intersection. Conse
 
 *946
 
 quently, Dr. Walters applied the brakes on his motorcycle and steered left, away from Ms. Goss’s vehicle, causing his bike to skid and “lay down” in the street.
 

 As a result of the accident, Dr. Walters sustained various injuries, including abrasions on his hands, elbow and knee, bruising to his thigh and chest, and a Morton’s neuroma (an injury to the nerve between the second and third toes of his right foot). According to Dr. Walters, he still experienced pain and numbness in his right foot nearly two years after the accident.
 

 13As previously stated, Dr. Walters sued Ms. Goss claiming that she was at fault for causing the accident. The trial judge agreed with Dr. Walters and found that Ms. Goss was 100% hable in causing the accident. The trial judge then awarded general damages, medical damages and court costs to be paid by Defendants to Dr. Walters.
 

 Defendants now appeal.
 

 DISCUSSION
 

 On review, an appellate court may not set aside the findings of fact by the trial court unless those findings are clearly wrong or manifestly erroneous.
 
 Smith v. Louisiana Dept. of Corrections,
 
 93-1305 (La.2/28/94), 633 So.2d 129;
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880 (La.1993);
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989). An appellate court must not base its determination on whether it considers the trier of fact’s conclusion to be right or wrong, but on whether the fact finder’s conclusion was reasonable.
 
 Stobart, supra.
 

 In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Salvant v. State,
 
 05-2126 (La.7/6/06), 935 So.2d 646;
 
 Stobart, supra.
 
 The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently.
 
 Pinsonneault v. Merchants & Farmers Bank & Trust Co.,
 
 01-2217 (La.4/3/02), 816 So.2d 270.
 

 14Where the fact finder’s conclusions are based on determinations regarding credibility of a witness, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
 
 Rosell, supra.
 
 With regard to decisions of law, however, a trial court’s ruling is subject to
 
 de novo
 
 review.
 
 Hall v. Folger Coffee Co.,
 
 03-1734 (La.4/14/04), 874 So.2d 90.
 

 In Defendants’ first assignment of error, they contend that the trial judge erred in finding Ms. Goss to be 100% at fault in causing the accident. La. R.S. 32:123 provides:
 

 A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
 

 B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said high
 
 *947
 
 way as to constitute an immediate hazard.
 

 C. At a four-way stop intersection, the driver of the first vehicle to stop at the intersection shall be the first to proceed. If two or more vehicles reach the four-way stop intersection at the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.
 

 D. The driver or operator of a vehicle approaching a yield sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the cross walk on the near side of the intersection or, in the event there is no cross walk, at a clearly marked stop line, but if none, then at the point nearest the intersecting |5roadway where the driver has a view of approaching traffic on the intersecting roadway. Having slowed or stopped in this manner, the driver shall yield the right of way to any pedestrian legally crossing the roadway on which he is driving, and to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard.
 

 E. (1) Any person who is found guilty of or pleads guilty or nolo contendere to a violation of the provisions of this Section shall be subject to the following penalties:
 

 (a) If the violation results in the injury of another person, the offender shall be fined two hundred dollars and may be subjected to a driver’s license suspension for a period of not less than thirty days, or both.
 

 (b) If the violation results in the serious bodily injury of another person, the offender shall be fined five hundred dollars and may be subjected to a driver’s license suspension for a period of not less than ninety days, or both.
 

 (c)If the violation results in the death of another person, the offender shall be fined one thousand dollars and may be subjected to a driver’s license suspension for a period of not less than one hundred eighty days, or both.
 

 (2) For purposes of this Section, “serious bodily injury” shall mean a bodily injury which involves unconsciousness, extreme physical pain, or protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
 

 With regard to intersections where the driver without the right of way has a partially obstructed view, the Louisiana Supreme Court stated the following in
 
 Toston v. Pardon,
 
 03-1747 (La.4/23/04), 874 So.2d 791:
 

 The jurisprudence indicates that stopping is only half the duty, the other half is not to proceed until determining that the way is clear.
 
 Guillot v. Valley Forge Ins. Co.,
 
 99-1044, p. 4 (La.App. 3 Cir. 12/8/99), 753 So.2d 891, 894. The second duty is heavier and requires an even greater degree of care when the intersection is blind, or partially obstructed.
 
 Continental Ins. Co. v. Duthu,
 
 235 So.2d 182, 186 (La.App. 4 Cir.1970)
 
 [writ refused,
 
 256 La. 820, 239 So.2d 346 (La.1970)]. A driver entering a superior highway where his view is obstructed is under a duty to proceed with extraordinary caution.
 
 Taylor v. State,
 
 431 So.2d 876, 879 (La.App. 2 Cir.1983).
 

 | fiIn their argument, Defendants stress the fact that Ms. Goss’s vehicle never entered the intersection where the accident occurred. Defendants contend that Dr. Walters overreacted in assuming Ms. Goss’s vehicle would enter the intersection, thereby causing his own accident and alleged injuries. Defendants assert that,
 
 *948
 
 since Ms. Goss only moved forward past the stop sign and white stop line in order to get a better view of oncoming traffic, but never actually entered the intersection, there should not have been a finding of liability or fault on her part. We agree.
 

 Ms. Goss fulfilled her duties as required by La. R.S. 32:123 and
 
 Toston v. Pardon, supra,
 
 by stopping at the stop sign and then by proceeding with “extraordinary caution.” Once Ms. Goss realized that she did not have a clear view of oncoming traffic from her position where she was stopped at the stop sign due to the various hanging signs and poles, she pulled forward toward the white stop line in an attempt to get a better view. On arriving to the white stop line, Ms. Goss determined that her view
 
 remained
 
 obscured by the various hanging signs and poles; but, rather than pulling forward blindly into the intersection, Ms. Goss proceeded cautiously and pulled past the white stop line several more feet, stopping short of the intersection, in an attempt to get a view of oncoming traffic without entering the intersection.
 
 [1]
 

 Ms. Goss’s attempts to gain a full view of the oncoming traffic in the intersection by pulling her vehicle forward several feet at a time, coupled 17with her ultimate
 
 decision not to enter the intersection,
 
 indicate that she exercised the “greater degree of care” and “extraordinary caution” required by the driver without the right of way who is attempting to cross a blind or partially obstructed intersection.
 
 Toston v. Pardon, supra.
 
 Ms. Goss continued to yield to
 
 oncoming
 
 traffic, in spite of her obscured view. At no point did Ms. Goss’s vehicle even partially enter the intersection or Dr. Walter’s path on N. 6th St.
 

 According to the testimony of officer Corporal Albert Edminston, the investigating officer at the scene of the accident and a motorcycle rider with over 20 years of experience, Dr. Walters could have taken more safe evasive action by simply moving into the left hand lane of his two-lane, one-way street. Officer Edminston testified that Dr. Walters appeared to have overreacted in the situation by braking and “laying down” his bike when Ms. Goss never even entered the intersection.
 

 We find Officer Edminston’s testimony persuasive, and agree that Dr. Walters could have easily avoided the accident by slowing his motorcycle and, if necessary, by moving to the left hand lane farthest from the point of entrance for Ms. Goss’s vehicle. Additionally, assuming
 
 arguendo
 
 that Dr. Walters had ultimately chosen not to slow his motorcycle or move to the opposite lane, no accident would have occurred since Ms. Goss made the prudent decision to never enter the intersection because her view was obscured.
 

 Considering the aforementioned, we find that the trial court had no reasonable basis upon which to find Ms. Goss liable for Dr. Walters’ | ^motorcycle accident and, further, in assessing her with 100% fault.
 

 Additionally, in light of our finding that Ms. Goss is not liable in this matter, we pretermit any discussion of damages.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court finding liability on the part of Defendants, Betty W. Goss and State Farm Mutual Automobile Insurance
 
 *949
 
 Company, is reversed. Costs of this appeal are assessed to Dr. Kermit L. Walters.
 

 REVERSED AND RENDERED.
 

 [1]
 

 . It is undisputed by both parties that Ms. Goss's vehicle never entered the intersection. Additionally, Ms. Sharon West testified at trial that, while she did not witness the accident, she was traveling a short distance behind Ms. Goss because the two had just left choir practice at the same time. Ms. West testified that, once she arrived at the scene of the accident, Ms. Goss's vehicle was clearly stopped several feet prior to the entrance of the intersection.