997 So.2d 529 (2008)
Randy FONTENOT, et al.
v.
PATTERSON INSURANCE, et al.
Germaine Brooks, et al.
v.
City of Lafayette, et al.
No. 2008-C-0414.
Supreme Court of Louisiana.
December 12, 2008.
*530 James D. Caldwell, Attorney General, Colleen Ann McDaniel, Assistant Attorney General, for applicant.
Larry Curtis Law Firm, Larry Curtis, Gregory Karl Klein, Lafayette, Simien & Minieux, Rickey Wayne Miniex, Lafayette, Allen & Gooch, Michael Edward Parker, Lafayette, Johnny Edward Wellons, Chiquita Patrece Tate, Baton Rouge, for respondent.
CALOGERO, Chief Justice.
We granted a writ application filed by the State of Louisiana through the Department of Transportation and Safety in order to determine the standard of review that should be applied by a court of appeal reviewing conflicting results of a jury and trial judge in a bifurcated trial. That issue has been the subject of a number of conflicting decisions in Louisiana's courts of appeal. However, following our review of the facts and procedural history, we have determined that this particular case does not involve conflicting results by a jury and trial judge because only the jury had authority to determine the State's liability in this case. Thus, the district court erred when it entered its own judgment in the case, and the court of appeal erred when it reviewed the case under the de novo standard of review with a view toward resolving the conflicting results. For the reasons set forth below, we remand this case to the court of appeal for review of the jury's decision under the manifest error standard of review.

FACTS AND PROCEDURAL HISTORY
The vehicular collision giving rise to this case occurred at the intersection of Morgan and Main streets in the City of Broussard, Louisiana, shortly after 11 p.m. on March 23, 2001. Randy Fontenot, a police officer for the Lafayette City-Parish Consolidated Government ("LCG"), was driving a police cruiser east on Main Street, the major traffic artery, when his vehicle was struck by a vehicle being driven south on Morgan Street by Germaine Brooks. Brooks' passenger, Charlotte Phillips, was killed as a result of the accident, while Fontenot and Brooks both suffered personal injuries. Both vehicles were damaged.
*531 Two separate lawsuits were filed as a result of the accident. The first suit was filed by Fontenot and his wife, Suzanne, against Brooks, and his insurer, Patterson Insurance Co. Fontenot's employer, LCG, filed a third party demand and intervention as a plaintiff in the Fontenots' suit against Brooks and Patterson Insurance, seeking reimbursement of workers' compensation benefits paid to Fontenot. The Fontenots later filed a supplemental and amending petition, naming the State and others as defendants,[1] and asserting their entitlement to a jury trial. Thereafter, LCG amended its intervention to name the State and others as defendants. In its answer to the supplemental and amending petition filed by the Fontenots, the State asserted its entitlement to  its preference in fact  a jury trial. When Patterson Insurance became insolvent, the Louisiana Insurance Guaranty Association ("LIGA") was added as a defendant.
The second suit was filed by Brooks and Leona Phillips, Charlotte's mother, seeking damages for personal injury and wrongful death, respectively. Originally named as defendants in the Brooks-Phillips lawsuit were Fontenot and his employer, LCG. Defendant LCG[2] responded to the Brooks-Phillips lawsuit by filing an answer in which it "specifically request[ed] a bench trial." LCG also filed a reconventional demand against Brooks and Patterson Insurance, in which it sought damages to its police cruiser and again sought recovery of the workers' compensation benefits it paid to Fontenot as a result of the accident. Additionally, LCG, appearing as third-party plaintiff, filed a third party demand against the State, among others, after which Brooks and Phillips filed a first amending petition also naming the State as a defendant.
The two suits were consolidated in the trial court. Following the consolidation, the trial court issued an "Order Granting Trial By Jury" at the State's request. Further, all of the principal claims set forth by Brooks and Phillips were settled and/or dismissed prior to trial, leaving as the only issues for trial LCG's demand as a plaintiff in reconvention against Brooks, and the Fontenots' principal demands against Brooks and the State. Thus, when trial in the consolidated cases began, the Fontenots and LCG were the only remaining plaintiffs, and the State, Brooks, and LIGA were the only remaining defendants. Significantly, no claims against LCG remained at the time of trial.
At trial, the primary factual issue was the liability of the State and the liability of the two drivers, Fontenot and Brooks. The claims of liability against the State were based on allegations that the intersection where the accident occurred was defective either because the traffic signal located there became a flashing yellow light on Main Street and a flashing red light on Morgan Street after 11 p.m., because the visibility from Morgan Street was obstructed by the library building on the corner, or because the State failed to place appropriate "stop bars" on the minor *532 artery at the intersection. The claims of liability against Fontenot were based primarily on allegations that he was driving the police cruiser in a negligent manner because he was speeding at the time of the accident, and/or because he entered the intersection without properly checking for opposing traffic on the minor artery. The claims of liability against Brooks were based primarily on allegations that he failed to stop at the flashing red light when he reached the intersection, and/or because he proceeded into the intersection without properly checking for opposing traffic on the major artery.
Following a four-day trial, both the jury and the trial judge issued judgments regarding the liability of the three parties. Although no claims against LCG remained, the trial judge issued a judgment on the record while the jury was deliberating. The trial judge assigned 50 percent liability to Brooks, 50 percent liability to the State, and zero percent or no liability to Fontenot, and awarded LCG $19,994.87, the amount stipulated by the parties as property damages to the police cruiser, against Brooks and the State. The jury entered a verdict that assigned 90 percent liability for the accident to Brooks, ten percent liability to Fontenot, and zero percent or no liability to the State. The jury awarded Fontenot the following damages: past medical expenses  $225,000; loss of past wages-$176,512, loss of future wages and earning capacity  $250,000, and general damages-$0. The jury also awarded $10,000 loss of consortium to Mrs. Fontenot, and $5,000 damages to the Fontenot's minor child.
Regarding the jury verdict, the Fontenots filed a motion for judgment notwithstanding the verdict (JNOV), or, in the alternative, a motion for new trial. The Fontenots sought a different allocation of fault than that assigned by the jury (90 percent to Brooks, 10 percent to Fontenot, and 0 percent to the State). The Fontenots also sought a general damages award, which had been denied by the jury. The trial judge granted the JNOV on the general damage issue and awarded Fontenot $500,000 in general damages, in addition to the other damages the jury had awarded Fontenot.
Three appeals were taken from the trial court judgments. First, the Fontenots appealed the liability findings and the degrees of fault assigned by the jury to the various defendants. Second, the State appealed the liability findings and the degrees of fault assigned by the trial judge to the various defendants, as well as the $500,000 general damage award to Fontenot as a result of the JNOV. Third, LCG appealed the degree of fault assigned to the State by the trial judge.
Before deciding the merits of the three consolidated appeals, the court of appeal considered the proper standard of review to be applied when a jury and a trial judge have entered conflicting judgments in a bifurcated trial. Fontenot v. Patterson Ins. Co., 06-1624 (La.App. 3 Cir. 12/5/07), 972 So.2d 401. Relying on its previous decision in Hebert v. Rapides Parish Police Jury, 06-2001, 06-2164 (La.4/11/07), 974 So.2d 635, the court of appeal found that the proper standard of review was de novo.
Following its de novo review of the record in this case, the court of appeal affirmed the jury verdict as amended by the trial judge's JNOV, but reversed the jury's finding that the State was not at fault for causing the accident and the jury's finding that Fontenot was 10 percent at fault for causing the accident. The court of appeal then reallocated liability, finding that the State and Brooks were equally at fault in causing the accident and assigning each 50 percent liability. We granted the State's *533 writ application. Fontenot v. Patterson Ins. Co., 08-0414 (La.6/6/08), 983 So.2d 907.

DISCUSSION
The issue of the proper standard of review to be applied by a court of appeal reviewing conflicting results by a jury and trial judge in a bifurcated trial first arose in Louisiana after the legislature's 1960 adoption of the forerunner to what is now called the "Louisiana Governmental Claims Act," currently La.Rev.Stat. 13:5101 et seq. La.Rev.Stat. 13:5101 of the original act provided that "[n]o suit against the state or other public body shall be tried by jury." Following the adoption of the Act, the first question considered by the courts was whether, in a case in which the State or other public body was a defendant, the liability of other defendants could be tried to a jury. Following some conflicting decisions on that issue by the courts of appeal and even this court, the issue was finally decided in Champagne v. American Southern Insurance Co., in which this court considered "whether a jury trial demand by a principal defendant can be defeated by the plaintiff subsequently amending his petition to add the State as a defendant." 295 So.2d 437, 437 (La.1974). The Champagne court found that the liability of other defendants could be tried to a jury, while the liability of the State was being tried to the trial judge, stating as follows:
It is to be noted that C.C.P. Art. 1731 expressly recognizes the right to jury trial except as limited by the provisions of C.C.P. Art. 1733. The official footnote to Art. 1731 unequivocally announces its purpose to preserve inviolate a litigant's right to jury trial. The jurisprudence likewise establishes that the right of a litigant to jury trial is fundamental in character and the courts will indulge every presumption against a waiver, loss or forfeiture thereof. Hicks v. Board of Supervisors of Louisiana State University, 166 So.2d 279 (La.App. 1st Cir.1964); Arrington v. McCarthy [McCarty], 136 So.2d 119 (La.App. 3d Cir.1962); Abercrombie v. Gilfoil[, 205 So.2d 461 (La.App. 1st Cir.1967)], supra. Of course, R.S. 13:5104 prohibits trial by jury in suits against the State or other public bodies. But, there is no express statutory provision controlling the situation where such a suit is consolidated with others which are not against the State or where the State is but one of several parties to a suit.
C.C.P. Art. 1735, supra, clearly contemplates that in one trial some issues can be tried before the jury and others can be decided by the judge. This has been the practice in the federal courts under Federal Rule 39(a), the source of C.C.P. Art. 1735. This procedure has succeeded in the federal courts. The possibility of different decisions on the same point by judge and jury should not affect the decision in this case. The judge already has the power to set aside a jury decision with which he is not in accord, C.C.P. Arts. 1812, 1813; and appellate courts have the right to review findings of fact of both judge and jury, La. Const. Art. 7, § 29.
Id. at 439. The Champagne court also recognized the fact that its decision might cause some confusion, stating as follows:
While one may speculate as to the practical difficulties in cases where judge and jury disagree, these difficulties would be no more severe than those which might arise in separate actions against the State and individual defendants. Nor are these difficulties of such magnitude as to defeat the right to trial by jury.
Id.
Perhaps the most obvious of the "practical difficulties in cases where the judge *534 and jury disagree" is the exact question raised in this case  i.e., the proper standard for reviewing those conflicting results. As previously stated, uncertainty concerning that issue has resulted in inconsistent results by the various Louisiana courts of appeal. The briefs filed by the parties to this appeal indicate that the genesis of the confusion on this issue was this court's directive when it remanded the case in Thornton v. Moran, that the court of appeal "resolve the differences in the factual findings between the jury and the judge ... and ... render a single opinion based on the record." 343 So.2d 1065, 1065 (La.1977). Some Louisiana courts of appeal have traditionally read that directive to require a manifest error standard of review, after which the court chooses the "more reasonable" of the findings that is not manifestly erroneous. See Eppinette v. City of Monroe, 29,366 (La. App. 2 Cir. 6/20/97), 698 So.2d 658; American Cas. Co. v. Ill. Cent. Gulf RR. Co., 601 So.2d 712 (La.App. 5 Cir.1992); Deville v. Town of Bunkie, 364 So.2d 1378 (La.App. 3 Cir.1978); Thornton v. Moran, 348 So.2d 79 (La.App. 3 Cir.1977). However, the Louisiana Fourth Circuit Court of Appeal has traditionally read our Thornton directive to sanction a de novo review when a jury and a trial judge have reached conflicting results in a bifurcated trial. See Aubert v. Charity Hosp. of La., 363 So.2d 1223 (La.App. 4 Cir.1978), writs refused, 365 So.2d 242 To further complicate the issue, courts of appeal have, in a couple of recent cases, adopted more complex rules for reviewing conflicting results. See, e.g., McDaniel v. Carencro Lions Club, 05-1013 (La.App. 3 Cir. 7/12/06), 934 So.2d 945 (applying a four-step inquiry to resolve the conflicting results); State Farm Mut. Auto. Ins. Co. v. LeRouge, 07-0918 (La.App. 4 Cir. 11/12/08), 995 So.2d 1262, (finding no conflict between the two results and thus applying a manifest error standard).
Although this court initially granted writs in this case in order to consider the issue of the proper standard to be applied by courts of appeal reviewing conflicting results by a jury and a trial judge in a bifurcated trial, our review of the facts and procedural history of this case has revealed that determination of that issue is unnecessary here. Axiomatically, the issue of the proper standard of review does not arise unless there exist conflicting results by a jury and trial judge, both of which are authorized by Louisiana law to determine at least one of the issues in the suit. Thus, the initial question that should be considered when a reviewing court has before it conflicting results is whether both the jury and the trial judge had the authority to enter a judgment on at least one of the issues in the suit. If either the jury or the trial judge is not authorized to enter judgment on any issue in the suit, then no conflicting otherwise valid judgments exist and no need exists "to resolve the differences in the factual results between the jury and the judge ... and to render a single opinion based on the record." Thornton, 343 So.2d at 1065.
In this case, post-trial results relative to liability and damages were issued by both the jury and the trial judge, and those results do conflict regarding the proper allocation of liability to the State, Brooks, and Fontenot. If both of those judgments were properly issued, it would indeed be necessary in this case to determine the proper standard of review for conflicting results by a jury and a trial judge in a bifurcated trial. However, for the reasons detailed below, we now find that the trial judge had no authority to decide any of the issues in these consolidated cases. LCG was the only party that *535 requested a judge trial, and that request was made in its answer to the Brooks-Phillips suit. All of the claims set forth by Brooks and Phillips against LCG, as well as the other claims set forth by Brooks and Phillips, were settled prior to trial. In fact, by the time this matter went to trial, LCG's involvement in the case was limited to its claims as set forth as a plaintiff in reconvention in the suit filed by Brooks and Phillips, and its claims set forth as third-party plaintiff in the suit filed by the Fontenots and in the suit filed by Brooks and Phillips. LCG asserted its right to a bench trial only in its answer as a defendant in the Brooks-Phillips case, as a political subdivision is allowed to do in a suits filed against that political subdivision, not in its reconventional demand in the Brooks-Phillips case or in its third-party demand in either the Fontenot case or the Brooks-Phillips case.
More importantly, LCG had no right under Louisiana statutory or jurisprudential law to request a judge trial when it set forth its claims as a plaintiff in reconvention in the Brooks-Phillips suit or when it set forth its claims as a third-party plaintiff in either suit. A public body's right to a judge trial is governed by the Louisiana Governmental Claims Act, La.Rev.Stat. 13:5101 et seq. According to its title, the Act applies only to "Suits Against State, State Agencies, or Political Subdivisions" (emphasis added). Further, La.Rev.Stat. 13:5101(B) provides that the Act applies
to any suit in contract or for injury to person or property against the state, a state agency, an officer or employee of the state or a state agency arising out of the discharge of his official duties or within the course and scope of his employment, or a political subdivision of the state, as defined herein, or against an officer or employee of a political subdivision arising out of the discharge of his official duties or within the course and scope of his employment.
(Emphasis added).
Specifically relative to political subdivisions of the state, such as LCG, La. Rev.Stat. 13:501(A) provides generally that "[n]o suit against a political subdivision shall be tried by jury." That sentence is modified by La.Rev.Stat. 13:5101(D), which provides as follows:
Notwithstanding the provisions of Subsection A, a political subdivision, by general ordinance or resolution, may waive the prohibition against a jury trial provided in Subsection A of this Section. Whenever the jury trial prohibition is waived by a political subdivision, and a jury trial is demanded by the political subdivision or the plaintiff in a suit against the political subdivision or against an officer or employee of the political subdivision, the demand for a jury trial shall be timely filed in accordance with law. The rights to and limitations upon a jury trial shall be as provided in Code of Civil Procedure Articles 1731 and 1732.
(Emphasis added.) Although, pursuant to the above language, the prohibition against jury trials in suits against a political subdivision remains in place under some circumstances, that fact is immaterial in this case because no suit against LCG, the political subdivision seeking a judge trial here, existed at the time of the trial. La. Rev.Stat. 13:5105(D) has no application when, as here, the claims to be tried were filed by the political subdivision. This court described the purpose of the prohibition in Kimball v. Allstate Insurance Co.,[3] in which it stated as follows:

*536 [W]ith the enactment of La. R.S. 13:5105(D), the legislature, in is wisdom, has chosen to allow political subdivisions being sued as parties in civil suits to determine whether or not to pass a resolution which would allow the parties in those suits to elect a jury trial.
97-2885, p. 19 (La.4/14/98), 712 So.2d 46, 60 (emphasis added).
On the other hand, the Louisiana Governmental Claims Act sets forth clear authority for the jury to determine the liability of the State in the claims filed against the State in these consolidated cases, including the LCG's claim against the State for damage to its police cruiser. La.Rev.Stat. 13:5101 no longer contains language prohibiting a jury trial in suits against the State or other public body. Instead, current La.Rev.Stat. 13:5105 governs jury trials against political subdivisions, the State, and state agencies. As we have already noted, the prohibition against suits against political subdivisions remains in place, with some modifications. However, regarding suits against the State and state agencies, La.Rev.Stat. 13:5105(A) provides as follows:
Except upon a demand for jury trial timely filed in accordance with law by the state or a state agency or the plaintiff in a lawsuit against the state or state agency, no suit against the state or a state agency shall be tried by jury.
Thus, under the current law, the State has no right to choose a judge trial in a suit filed against it. Instead, if neither the plaintiff nor the State requests a jury trial, then the case is tried to a judge. Conversely, if either the plaintiff or the State requests a jury trial, the case is tried to a jury. In this case, both the State and the Fontenots (the plaintiffs) timely filed a demand for a jury trial in this case. Thus, unlike the trial judge, the jury had authority to decide the claims against the State, including the claims against the State set forth in LCG's reconventional and third party demands.
After this case was submitted for decision, this court sought additional briefing from the parties on the issue of whether the trial judge had authority to decide any of the issues in this case. Because LCG is not a party to this writ application, it has not submitted any additional briefing on its right to a judge trial. However, the Fontenots filed a supplemental brief in which they set forth several arguments to support their claim that the trial judge properly decided LCG's property damage claim against the State, despite the fact the State requested a jury trial.[4]
First, the Fontenots assert that the trial judge properly issued a judgment on LCG's property damage claim pursuant to La.Code Civ. Proc. Art. 1731(B) as interpreted by this court in Leonard v. Parish of Jefferson, 95-1082 (La.1/16/96), 666 *537 So.2d 1061. La.Code of Civ. Proc. Art. 1731(B) provides that "the nature and amount of the principal demand shall determine whether any issue in the principal or incidental demand is triable by jury." In Leonard, the plaintiff filed suit against Jefferson Parish seeking damages for injuries allegedly incurred when she fell while riding in an elevator in a building owned by the parish. At the time, La.Rev.Stat. 13:5101 prohibited jury trials against a political subdivision of the State and did not include any exceptions. Jefferson Parish then filed a third-party demand against Montgomery Elevator Co, seeking indemnification under the terms of a maintenance agreement and Montgomery Elevator requested a jury trial on the third-party demand asserted by Jefferson Parish. This court held that, pursuant to La.Code Civ. Proc. art. 1731(B), the third-party demand could not be tried by a jury because jury trial was unavailable on the principal demand. Id.
This case is distinguishable from Leonard in several respects. First, the principal demand in this case includes all of the claims set forth by Brooks and Phillips, including their claims against the State set forth in their amending petition. C.F. Moore v. Gencorp, Inc., 93-0814 (La.3/22/94), 633 So.2d 1268 (holding that the term "principal action" encompasses the claims as amended or supplemented, and not just the demand as set forth in the original petition). Unlike Leonard, only a portion of the principal demand set forth by Brooks and Phillips here was triable to a judge. Brooks and Phillips' claims against the State were triable to a jury. The denial of the third-party defendant's right to jury trial in Leonard was premised on the fact that the principal demand could not be tried to a jury. The same is not true in this case.
A second way this case differs from Leonard is the fact that the principal demand against LCG, which was the only basis for LCG's right to request a judge trial, was settled prior to trial. As a result, the only claims in this complex litigation that were tried to a judge were the reconventional and third party demands in which LCG appeared as a plaintiff, not as a defendant. In other words, as we have already stressed, at the time of trial, there were no pending claims against LCG that would have afforded LCG the right to demand a judge trial under La.Rev.Stat. 13:5101. Unlike the Leonard case, the trial judge in this case did not decide both a principal demand and an incidental demand filed by the political subdivision that had properly requested the judge trial in response to a the filing of a claim against that political subdivision. Further, as noted by Justice Lemmon in his concurrence in Leonard, the majority therein "avoided an unwarranted extension of bifurcated trials, which should not be done in the absence of an express contrary intent that is lacking in this context." 95-1082 at 1, 666 So.2d at 1064 (Lemmon, J. concurs). In this case, allowing the LCG's claims to be tried by the judge resulted in a bifurcated trial, with all the difficulties attendant thereto. We agree with Justice Lemmon that bifurcated trials should be avoided when possible.
The Fontenots further argue that LCG's property damage claim could not have been tried to a jury because it did not meet the $50,000 requirement for jury trials set forth in La.Code Civ. Proc. art. 1734. According to the Fontenots, LCG's claim for reimbursement of workers' compensation benefits, which LCG Exhibit 2 indicates totaled $365,533.89, cannot be cumulated with the property damage claim to reach the necessary jurisdictional amount because the reimbursement claims *538 was set forth in the Fontenot suit, "a separate, albeit consolidated, proceeding." However, the Fontenots themselves admitted that LCG set forth its claim for reimbursement of workers' compensation benefits in both of the consolidated suits. Thus, there is no merit to the Fontenot's argument that LCG's reconventional and third party demands did not meet the required jurisdictional amount for a jury trial.
Finally, the Fontenots set forth a general argument that the State waived any objection to the failure to submit the third-party demand to the jury and that this court therefore should not consider whether the trial judge had authority to decide the LCG's claims against the State. Contrary to the argument of the Fontenots, no objection by the State was necessary. As we have already stated, the trial judge issued an order for a jury trial on the request of the State. Thereafter, but prior to dismissal of the principal claims in the Brooks-Phillips case, LCG sought to strike the jury order as it applied to the claims against LCG, but not as it applied to LCG's reconventional and third party demands. A review of the pleadings in the record of these consolidated cases indicates that LCG's pretrial argument that it was entitled to a judge trial was founded solely on its right to have its liability decided by the trial judge. For example, in its "Motion to Strike," LCG asserted at paragraph six that the jury trial should be stricken only "as it applies to this political subdivision and its employee and that the trial be bifurcated so that the liability of [LCG] is tried by judge." In the concluding paragraph of that same pleading, LCG stated that, as a political subdivision, it is "exempt from defending a jury trial." Further, in its memorandum responding to the opposition memoranda to its motion to strike the jury order, LCG begins its analysis by stating specifically as follows: "It should be noted at the outset that the LCG's Motion to bifurcate relates only to the suit that Germaine Brooks and Leona Phillips have against the LCG and Mr. Randy Fontenot." Of course, LCG's liability was at issue only in the Brooks-Phillips principal demand. Thus, in addition to the fact that the trial judge had no legal authority to decide the State's liability to LCG, the pleadings reveal that LCG, the party that requested the judge trial, never intended for the trial judge to decide its reconventional or third party demands against the State.
Because the Louisiana Governmental Claims Act does not allow a political subdivision to request a judge trial in a case in which it appears as plaintiff, the trial judge here had no authority to decide LCG's claims against the State. Because both the Fontenots and the State asserted their entitlement to a jury trial, the jury had authority to decide all claims against the State, including the claims set forth by LCG.
Accordingly, the court of appeal decision is reversed and this case is remanded to the court of appeal for review of the jury's findings of liability under the manifest error standard of review. Because the amount of property damages due LCG for its police cruiser was stipulated prior to trial, the court of appeal should, following its review for manifest error, apply the proper percentages of liability to both the damages due the Fontenots and the property damages due LCG. Insofar as the trial court granted a JNOV and awarded Fontenot general damages, the court of appeal should review that finding for manifest error using the two-part inquiry set forth by this court in Davis v. Wal-Mart Stores, Inc., 00-0445, p. 5 (La.11/28/00), 774 So.2d 84, 89.

*539 DISPOSITION

The court of appeal's decision based on its de novo review of the record in this case is reversed. This case is remanded to the court of appeal for consideration of the jury verdict under the manifest error standard of review, followed by application of the percentages of liability to the damages due the Fontenots and the stipulated property damages due LCG. The court of appeal should also review the JNOV under the standard set forth by this court in Davis.
COURT OF APPEAL DECISION REVERSED; REMANDED TO COURT OF APPEAL.
NOTES
[1] The other defendants named in the amended pleadings and any issue regarding those defendants are not relevant at this juncture in this case.
[2] In the Brooks-Phillips case, LCG appeared as a defendant only because it was Fontenot's employer, such that both Fontenot and LCG are named as defendants in the principal demand. In its reconventional demand against Brooks and its third party demand against the State, LCG sought recovery of damages to its police cruiser. Nevertheless, the reconventional demand and the third-party demand name both Fontenot and LCG as plaintiffs. For the sake of simplicity, we have omitted references to Fontenot as LCG's co-defendant and co-plaintiff in our discussion of the right to a judge trial.
[3] The primary issue in Kimball was the constitutionality of La.Rev.Stat. 5105(C). However, as part of the discussion of that issue, the opinion contains an extensive discussion of sovereign immunity and the historical development of the prohibition on jury trials against the State and other public bodies contained in the Louisiana Governmental Claims Act, as well as the exceptions to that prohibition that have been codified.
[4] The State also submitted supplemental briefing in response to this court's request. Although the State agrees that the trial judge herein had no right to issue a judgment in this case, it also asserted that the standard of review for conflicting results by a jury and a trial judge in a bifurcated trial is a "justiciable issue" in this case that we should decide. However, because we have found that this case does not involve conflicting valid results since the trial judge had no authority to issue a judgment, we decline to decide the issue of the proper standard of review. In fact, because determination of that issue is not necessary in this case, any decision we issued would be obiter dictum. See DuBell v. Union Cen. Life Ins. Co., 211 La. 167, 177, 29 So.2d 709, 712 (1947).