STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-109


ANTHONY COMEAUX, ET AL.

VERSUS

ACADIA PARISH SCHOOL BOARD


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 84494 E
HONORABLE HERMAN CLAUSE, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Billy Howard Ezell, Judges.

AFFIRMED IN PART, REVERSED
IN PART; MOTION GRANTED.

Alan K. Breaud
Timothy W. Basden
Breaud & Meyers
P. O. Drawer 3448
Lafayette, LA 70502
(337) 266-2200
Counsel for Plaintiffs/Appellants:
    Anthony Comeaux
    Julie Marie LeLeux Comeaux

Joseph R. Pousson, Jr.
Plauche, Smith & Nieset
P. O. Drawer 1705
Lake Charles, LA 70602-1705
(337) 436-0522
Counsel for Defendant/Appellee:
    Acadia Parish School Board

**DECUIR, Judge.**

Anthony and Julie Comeaux, individually and on behalf of their minor daughter, Allison, filed suit against the Acadia Parish School Board following a cheerleading accident in which Allison sustained injuries. After a bench trial, judgment was rendered in favor of the Comeauxs. The Comeauxs now appeal, contesting the finding of comparative fault, the award of damages, and the assessment of 25% court costs. The plaintiffs have also filed a motion to strike, seeking sanctions for defense counsel's alleged violation of an order of the trial court to seal a portion of the record. For the following reasons, we affirm in part, reverse in part, and grant the motion to strike.

On May 31, 2005, Allison Comeaux, who has now reached the age of majority, was a fifteen-year-old freshman at Crowley High School in Acadia Parish. She was a cheerleader whose role on the squad was as a "flyer," i.e., a squad member lifted into the air and tossed up for stunts by the one male cheerleader on the squad, Trevor Thibodeaux. In an effort to build a competitive cheerleading team, the Crowley coach, Lori Latiolais, urged her squad members to recruit other boys. Allison convinced her boyfriend, Dustin Touchet, to try some basic cheerleader stunts with her at home. On the last day of school, Coach Latiolais called a special practice, attended by Allison, Trevor, and Dustin, so she could see what Allison and Dustin had practiced.

Dustin was a football player who was characterized in the testimony as very strong. He was able to lift Allison easily and execute the basic stunt called "toss to chair" comfortably. After demonstrating that stunt, Allison and Dustin were instructed by Coach Latiolais to attempt an overhead extension, an advanced stunt requiring certain skills of both participants. Latiolais was not a trainer; she was

merely a teacher who had cheered in high school and was therefore asked to oversee the program at Crowley High School. Dustin was completely untrained as a cheerleader. He was instructed on the stunt by Trevor, who simply spent a few minutes describing what he was to do in the stunt. Dustin approached the maneuver as though it were a weightlifting exercise. He thought his main objective was to lift Allison to a standing position, then hold onto her feet tightly. Conversely, Allison knew from her years of training as a cheerleader that she was to jump down should she anticipate a failure of the stunt, requiring that her feet be free. No mats or other safety equipment were used at this practice.

The accident occurred when Allison attempted to jump down while Dustin held her feet tightly. She fell to the carpeted floor on her back, experiencing immediate pain. Dustin helped her to the car and drove her straight to the doctor's office. The doctor then had Allison transported to the hospital. She was diagnosed with two compression fractures of the spine at levels T12 and L2. She spent eight weeks in a back brace that summer and was told to quit cheerleading. The fractures healed; however, the discs are minimally herniated. Allison has been restricted from high-impact sports and testified that she experienced pain while carrying her backpack and sitting in a desk for long periods of time.

The trial court found fault on the part of the School Board through the failure of Coach Latiolais to properly train Dustin in the progression of skills necessary to execute an overhead extension, in the delegation to Trevor of training Dustin, and in the improper placement of spotters who were there to help insure Allison's safety. The trial court also found fault with Allison. The court assessed her with 25% comparative fault for buckling her knees during the stunt and balling up during her

2

fall. In reasons for judgment, the court explained that when the stunt "was attempted, her knees buckled, which guarantees failure of the stunt. . . . And in the failure phase, the way she fell contributed to the injuries she received. Instead of laying out and remaining stiff . . . she tucked in somewhat, balled up."

In this appeal, the Comeauxs contend the trial court erred in assessing fault to Allison for two reasons. First, the School Board did not plead the affirmative defense of plaintiff fault. Second, the facts do not support a finding of comparative fault. Because we find the trial court erred in its factual conclusion regarding the fault of Allison Comeaux, we choose not to discuss the adequacy of the School Board's pleadings on the issue.

A duty-risk analysis must be applied in a claim of comparative fault. Fault in causing an accident is determined under a five-step duty-risk analysis:

> This is a five-step process which requires that a party asserting fault on another establish (1) that the party whose fault is at issue had a duty to conform his conduct to a specific standard, 2) that the party's conduct failed to conform to the appropriate standard, (3) that the party's conduct was a cause-in-fact of the injuries at issue, (4) that the party's substandard conduct was a legal cause of the injuries at issue, and (5) that there were actual damages. *Toston v. Pardon*, 03-1747 (La. 4/23/04), 874 So.2d 791.

*Fontenot v. Patterson Ins.*, 06-1624, 06-1625, p. 6 (La.App. 3 Cir. 2/18/09), ____ So.2d ____.

The testimony of both Allison and Dustin shows that Allison perceived an imbalance in the stunt; she thought Dustin was falling in what was his third attempt to lift her overhead. Therefore, in compliance with her training, she attempted to jump off, thereby necessarily bending her knees. She was prevented from jumping safely, however, when Dustin continued the thrust of the lift and held on to her feet. The mechanics of the stunt and the lack of split-second communication between the

3

participants caused Allison's knees to buckle and the awkward position of her body as she fell. To find that Allison breached a legal duty to fall a certain way is clear error. We, therefore, reverse the assessment of 25% fault to Allison and the corresponding reduction of damages and assignment of costs.

Also in this appeal, the Comeauxs complain of the trial court's failure to award future lost wages, damages for loss of enjoyment of life, and adequate future medical expenses and general damages. We have reviewed the testimony and medical evidence in detail and conclude the trial court committed no error in its damage award, which consisted of the following elements:

Past medical expenses......................$ 14,366.19

Future medical expenses..................$35,000.00

Future lost wages.............................$0

Past pain and suffering.....................$50,000.00

Future pain and suffering................$150,000.00

Disability.........................................$25,000.00

Loss of enjoyment of life..................$0

                    TOTAL:......................$274,366.19

The record before us shows Allison to be an active, sociable young woman. At the time of trial, she had two jobs, was finishing up her high school career, and kept herself busy by traveling, attending concerts, and going out dancing. However, after failing grades, numerous absences, and a bad break-up with Dustin Touchet, Allison left Crowley High School midway through her junior year. At the time of trial, she was enrolled in Gumpoint Christian Academy, a local school which provides home-based online learning. Allison attributed her academic problems to the injuries

sustained in the cheerleading accident and attempted to minimize any other factors which could have caused her to leave school. The evidence, however, shows that Allison's academic problems and her complaints of severe pain arose eighteen months after the accident and followed personal problems with Dustin and other school mates, an automobile accident, and a fall. Although Allison's complaints at trial were profound, pharmacy and other medical records show she almost never took medication for pain or urinary leakage, a secondary complaint documented in medical records more than a year after the accident. Estimates of future medical care were minimal and not at all definitive; however, there was indication in the record that Allison may need care for her back or her urological complaints at some point in the future.

Regarding academic problems, dropping out of Crowley High School was a choice that did not seem to make sense. Allison's parents did not talk to the school administration, request a home-bound teacher, or ask for physical accommodations to alleviate the pain from her backpack or from sitting at her desk. Furthermore, there is no evidence in the record that Allison will not be capable of obtaining a college degree, as she had always planned. She has no job restrictions other than to avoid heavy lifting, and, in fact, she was working as a waitress at the time of trial.

Our review of the record shows insufficient proof of future lost wages and any loss of enjoyment of life. Furthermore, the $35,000.00 award for future medical expenses and the $150,000.00 award of general damages were adequate and well supported by the evidence.

Finally, we turn now to the Comeauxs' motion to strike a copy of a proposed stipulation attached to the School Board's brief to this court. The original of the

5

controversial document was placed in the record in a loosely closed envelope. It was not marked "sealed" and had no exhibit number. The handwritten document was an unsigned purported stipulation never executed and never entered into the record. Nevertheless, counsel for the School Board attached it to his brief to this court. Neither the minutes of the trial court proceedings nor the transcript itself include any reference to this document. Accordingly, we have determined the proposed stipulation was inappropriately included in the record and in brief to this court. By order of this court, it will be stricken and removed from all copies of the record and the School Board's brief, both paper and electronic. Sanctions against the School Board and its counsel, however, are denied, as there is no indication that counsel violated an order of the trial court to seal a portion of the record, as alleged by the plaintiffs.

For the above and foregoing reasons, the judgment of the trial court is reversed in part and affirmed in part. That portion of the judgment which assessed 25% comparative fault to Allison, and the corresponding reduction of damages and assessment of court costs, are hereby reversed. In all other respects, the judgment of the trial court is affirmed. Plaintiffs' motion to strike is granted, and the proposed stipulation is hereby stricken from the record and all copies of the defendant's brief. Costs of this appeal and the motion to strike are assessed to the Acadia Parish School Board.

**AFFIRMED IN PART, REVERSED IN PART; MOTION GRANTED.**